WILLIAM A. CLARKE *vs.* BOARD OF APPEALS OF NAHANT & another.[1]

Essex.   December 18, 1958. — February 3, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Zoning.   Nahant.   Equity Pleading and Practice,* Appeal, Report of material facts, Exhibits.

Upon appeal from a final decree in a suit in equity in which the trial judge filed a statutory report of material facts mentioning certain documents which were among the exhibits but not referring expressly

---

[1] Winthrop E. Sears, the building inspector of Nahant.

to the exhibits as such, and filed a certificate permitting the exhibits to be presented to this court without reproduction, purporting to act under Rule 6 of the Rules for the Regulation of Practice before the Full Court (1952), the certificate was construed as incorporating the exhibits in the report of material facts. [475]

A conveyance of two adjoining lots by their common owner, prior to adoption of a zoning by-law in the town in which the lots were situated, by a recorded deed describing each lot separately sufficed to make each lot one "duly recorded by . . . deed" within a provision in the by-law exempting lots so recorded at the time of the adoption of the by-law from certain area requirements. [477]

A provision of a zoning by-law that minimum area requirements therein set forth should not prevent building "on any lot . . . containing a smaller area provided such lot on the effective date hereof does not adjoin other land of the same owner available for use in connection with said lot," if applicable, would not operate to allow building on a vacant lot with less than the required area which on such effective date adjoined for about thirteen feet another lot of the same owner where it appeared that, although the two lots, abutting on different ways, were separated by a "substantial" stone wall and were at different elevations and "to all appearances" were separate lots, pedestrian travel or, if a driveway were to be built, vehicular travel between the two lots would be feasible and the vacant lot could be put to uses accessory to the other lot. [477–478]

Where it appeared that a section of a zoning by-law as originally adopted by Nahant prescribed specified minimum areas for dwelling lots except that "Lots duly recorded by plan or deed or assessed at the time this by-law is adopted may be used, provided that all requirements in regard to yards are fulfilled," and that subsequently that section was amended by adding the phrase "Nothing contained in this section, however, shall prevent the construction or placing of any building on any lot . . . containing a smaller area provided such lot on the effective date hereof does not adjoin other land of the same owner available for use in connection with said lot," the amendment with its proviso should be construed as not applying to lots within the letter of the exception originally set forth in the section. [478–480]

BILL IN EQUITY, filed in the Superior Court on February 7, 1958.

The suit was heard by *Cahill*, J.

The case was submitted on briefs.

*Mayland P. Lewis*, Town Counsel, for the defendants.

*Israel Bloch*, for the plaintiff.

CUTTER, J. The plaintiff owns a lot of land at 289 Castle Road, Nahant (hereinafter called No. 289), containing 2,766 square feet. In the rear of No. 289 is a "substantial"

stone wall which separates No. 289 from a parcel at 21 Bay View Avenue (known as lot No. 19) owned by the plaintiff's father, who also owned No. 289 prior to his conveyance of that lot to the plaintiff on July 17, 1957. Lot No. 19, on which stands a single dwelling, is in elevation considerably above No. 289 and "is to all appearances a separate lot," although it adjoins No. 289 at the latter's westerly corner for 13.41 feet. The plaintiff applied to the building inspector for a permit to construct a single family dwelling on No. 289 and this permit was refused. This refusal was based solely upon § 10 of the town's zoning by-law. The board of appeals on January 22, 1958, affirmed this refusal. The plaintiff appealed to the Superior Court which entered a decree directing that the permit be granted. The defendants have perfected an appeal to this court. The facts stated are those found by the trial judge, including certain facts noted as appearing in exhibits.

The judge by a certificate as to exhibits, adopted on the same day upon which he adopted his earlier findings of fact as a statutory report of material facts, permitted the presentation of the exhibits to this court without reproduction, purporting to act under Rule 6[2] of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 696. Although he did not expressly refer to the exhibits as such in his report of material facts he did mention certain conveyances, the town zoning by-law, and the decision of the board of appeals all of which were among the exhibits. The exhibits, unless annexed to and incorporated as a part of his report of material facts, could not be considered by us. See *Gordon* v. *Guernsey*, 316 Mass. 106, 108. See also *Davis & O'Connor Co.* v. *Shell Oil Co. Inc.* 311 Mass. 401, 403. Accordingly, we construe his certificate, which would otherwise be meaningless, as such an incorporation of these exhibits in his report of material facts.

The zoning by-law was first adopted in 1937 and has been

---

[2] The evidence is not reported so his action must be taken to have been under par. (B) or par. (C) of Rule 6. Paragraph (A) applies only "where the evidence is reported."

amended in 1940 and 1952, in respects here pertinent. Section 10 of the zoning by-law as amended in 1952 provides: "In residence districts . . . land laid out after the adoption of this by-law shall provide for each house the following minimum lot areas: *For a one-family house, not under 10,000. sq.*[3] *ft.* . . . Lots duly recorded by a plan or deed or assessed at the time this by-law is adopted may be used, provided that all requirements in regard to yards are fulfilled. Nothing contained in this section, however, shall prevent the construction or placing of any building on any lot in any of said districts containing a smaller area provided such lot on the effective date hereof does not adjoin other land of the same owner available for use in connection with said lot.[4] No lot on which a dwelling house . . . is situated whether heretofore or hereafter placed, shall be reduced in area, if such lot is smaller than is hereby prescribed, or if by such reduction it would be made smaller than is hereby prescribed, except in either case by taking by eminent domain or by a conveyance for a public purpose."

Lot No. 19 is shown by the deed to the plaintiff's father and mother dated January 25, 1956, to contain "about 4,000 square feet," and was conveyed to the plaintiff's parents together with No. 289. Both parcels were conveyed to J. Frank Taylor (through whom the grantors to the plaintiff's parents claim) on June 14, 1929, several years prior to the adoption of the zoning by-law. It appears that the two parcels were under common ownership at least from 1929 until the 1957 conveyance of No. 289 to the plaintiff. In each of these conveyances, except that to the plaintiff, lot No. 19 and No. 289 were separately described. No. 289 was formed out of parts of two lots (Nos. 22 and 23) shown with lot No. 19 and various other lots on a plan recorded in the Essex South District registry of deeds in

---

[3] The language in italics was inserted in 1952 in § 10 as theretofore amended in 1940. It had previously been amended in 1951 to increase the lot area required for single family houses from 5,000 to 7,500 square feet.

[4] This sentence and the following sentence were added by a general revision of § 10 in 1940. The next prior sentence was not materially changed in 1940 but remained as it appeared in the 1937 version of the by-law, except for the insertion of "a" before "plan."

1894. The trial judge found that No. 289 "has been assessed and taxed as a separate lot apart from" lot No. 19, and "that for all practical purposes . . . it is not now nor has it been available for use to the owner of" No. 19.

The provision of § 10 upon which the plaintiff relies is the sentence (hereinafter for convenience referred to as the 1937 exception), "Lots duly recorded by . . . deed or assessed at the time this by-law is adopted may be used, provided that all requirements in regard to yards are fulfilled." The house which the plaintiff proposes to place on No. 289 complies with the yard requirements. The 1929 conveyance of No. 289 and lot No. 19, as already noted, described each of these lots separately. It sufficed to make each such lot one "duly recorded by . . . deed." Accordingly, No. 289 is exempt from the area requirements of § 10, unless the 1937 exception is affected by the language of the next following sentence (hereinafter for convenience called the 1940 amendment; see footnote 4, *supra*) which provides that "[n]othing . . . in this section . . . shall prevent the construction . . . of *any* building on *any* lot . . . containing a smaller area provided such lot on the effective date hereof does not adjoin other land of the same owner available for use in connection with said lot" (emphasis supplied).

1. The trial judge apparently concluded that the 1940 amendment, and its proviso, applied to lot No. 19 and to No. 289, notwithstanding the fact that the two lots had been described in deeds recorded prior to 1937. He seems to have rested his decision upon his conclusion that No. 289 "is not . . . available for use to the owner of" lot No. 19, in effect saying that, upon the facts, the proviso was not controlling. This conclusion was not justified by the subsidiary facts found by him and those established by the reported exhibits.

The trial judge's findings establish that No. 289 and lot No. 19 were adjoining lots in common ownership at all times, at least between 1929 and the conveyance to the plaintiff in 1957. The plans among the exhibits show that the lots adjoin each other for about thirteen feet. Photo-

graphic exhibits indicate that the differences in elevation are not such as to preclude pedestrian or, if a driveway were to be built, vehicular travel between the two lots. Each lot abuts on a way or street. The term "available for use" employed in the by-law we construe as meaning "susceptible of use for any reasonable purpose." The term would include accessory use of one lot in connection with the other as well as the use of a part of each lot to support a single dwelling. It is obvious that No. 289 could be used by the owner of lot No. 19 for an accessory garage, shed, garden, or yard. Under the circumstances, the proviso in the 1940 amendment, if it is applicable at all to these lots, would prevent granting a building permit to the plaintiff.

2. A more difficult question is whether the 1940 amendment has any reference at all to lots within the terms of the 1937 exception, literally construed. There is no express reference in either of the two sentences to the other. Each of these sentences refers to, and may by itself constitute, an exception from the area requirements of § 10. Each sentence may have a different coverage in terms of the lots to which it is applicable, for the 1940 amendment refers to "any" lot, whereas the 1937 exception expressly refers only to lots "duly recorded by a plan or deed" or "assessed" when the by-law took effect in 1937. There could then have been lots not separately assessed and not then affirmatively shown or described in any recorded plan or deed, as, for example, land devised in separate parcels shortly before 1937 or land remaining after an owner had conveyed part of his land, describing it by metes and bounds but without describing in any way the land to which he retained title. A few lots, not ascertainable by examining any public records, might exist because separated by obstacles on the ground such as cliffs, ways, or bodies of water. It is thus necessary to determine whether the 1940 amendment, including its proviso, was intended to apply (a) only to lots not within the letter of the 1937 exception, or (b) to all lots in the town, including those clearly within the 1937 exception.

The 1940 amendment is much like the ordinance considered in *Vetter* v. *Zoning Bd. of Appeal of Attleboro*, 330 Mass. 628, 629. That case, however, is not here controlling, for the ordinance there considered contained no language like that of the 1937 exception. Indeed, there is some suggestion in the *Vetter* opinion (at p. 630) that, if appropriate provisions referring to lots shown on the public records or on assessment books had been there present, a different problem would have been presented. Obviously, here the presence in § 10 of the 1937 exception may have substantial significance.

We must interpret the 1937 exception and the 1940 amendment together, giving to each whatever effect may be appropriate in the light of the general intention, if any, disclosed by reading them together. See *Corbett* v. *Derman Shoe Co., ante*, 405, 409. We assume that, between 1937 and 1940, the 1937 exception would have permitted building a dwelling (with adequate yard space) upon No. 289, although the 1937 exception merely states somewhat vaguely that lots within its provisions "may be used." The 1940 amendment, on the other hand, makes express reference to the "construction or placing of any building on any lot." The 1940 amendment contains no express reference to compliance with "all requirements in regard to yards." This omission probably is without significance. The 1940 amendment begins with the words "Nothing . . . in this section, however, shall prevent . . . ," and the yard requirements are found in a different section of the by-law. The 1937 exception, of course, contains no proviso like that found in the 1940 amendment.

Nothing in the record shows why the 1940 amendment was adopted, leaving the 1937 exception essentially unchanged. Various explanations can be suggested, but all involve speculation. The 1940 amendment, standing alone, is broad enough to control all construction of dwellings upon lots smaller than the areas required by § 10. If so construed, however, as dealing with the whole subject, the 1937 exception would have slight, if any, remaining meaning.

On the other hand, if the 1940 amendment is held to apply only to lots not within the letter of the 1937 exception, both the 1937 exception and the 1940 amendment can be given some operative effect. This consideration is persuasive. See *Bolster* v. *Commissioner of Corps. & Taxn.* 319 Mass. 81, 84–85; *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 312–313, 314.

There is not clear enough indication that the 1940 amendment (with its proviso) was intended to diminish the exemption applicable to lots theretofore protected from the area restrictions of § 10 by the 1937 exception to lead us to construe the 1940 amendment as having application to such lots. Although an intention to apply the proviso to such lots would have been consistent with the general purpose of the zoning laws, those drafting the 1940 amendment should have expressed that intention more clearly, if that was their purpose. Cf. e.g. G. L. c. 40A, § 5A, inserted by St. 1958, c. 492, and the ordinance considered in *Vetter* v. *Zoning Bd. of Appeal of Attleboro*, 330 Mass. 628, 629. Cf. also the ordinance considered in *Publico* v. *Building Inspector of Quincy*, 336 Mass. 152, 154. We construe the proviso in the 1940 amendment as having no application to lots which fall within the literal terms of the 1937 exception. If this construction has undesired effects, the remedy lies in appropriate and clear revision of § 10.

No argument has been made that the exceptions contained in § 10 are in any manner invalid. We thus have no occasion to consider this matter.

*Decree affirmed.*